UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. JUAN BAUTISTA CASTRO-CABRERA, Defendant. | Case No. CR 07-00912 DDP **ORDER GRANTING THE MOTIONS IN LIMINE** [Motions filed on October 15, 2007] |

This matter is before the Court on the Government's motions in limine. After reviewing the papers submitted by the parties and considering the arguments therein, the Court grants both motions and adopt the following order.

**I. BACKGROUND**

Defendant Castro-Cabrera is charged with illegal reentry to the United States following deportation, in violation of 8 U.S.C. § 1326. Defendant has two previous illegal reentry convictions, and is currently serving a 14-month sentence for violating his supervised release by illegal reentry to the country.

To prove illegal reentry, the Government must show: (1) Defendant was, at the time of the offense, an alien; (2) Defendant had been lawfully deported or removed from the United States; (3) subsequent to this deportation or removal, Defendant was found in the United States after knowingly and voluntarily reentering and thereafter remaining in the United States; and (4) no representative of the Attorney General or the Secretary of the Department of Homeland Security had consented to Defendant's reentry or presence in the United States. 8 U.S.C. § 1326.

The Government brings a motion in limine to allow as party admissions various statements regarding Defendant's alienage; specifically, statements made by the Defendant that he is a Mexican citizen.[1] (Gov't's Mot. To Admit Admissions 1-2.) The Government also brings a motion in limine to exclude evidence related to a jury nullification defense, "including any evidence or argument concerning (1) defendant's wish to return to the United States to visit his mother, or (2) defendant's cultural assimilation, including mention of the length of time defendant has lived in the United States, his United States citizen children, or his lack of Spanish language skills." (Gov't.'s Mot. To Exclude Evidence Related to Jury Nullification 1-2.)

---

[1] In its opening brief, the Government sought admission of Defendant's statements made through defense counsel, but the Government no longer takes that position. (See Gov't.'s Reply Br. 1.)

## II. MOTION IN LIMINE #1: PARTY ADMISSIONS

A. Legal Standard

Under Federal Rule of Evidence 801(d)(2), the admissions of a party-opponent are not hearsay. A party admission is a "statement offered against a party and (A) the party's own statement . . . or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship. . . ." Fed. R. Evid. 801(d)(2).

B. Analysis

The Government seeks admission of statements by Defendant that he is a citizen of Mexico, which were made during deportation hearings, in writing on immigration-related documents or in criminal plea agreements, and during plea colloquies. The Government argues that such statements are admissible as party admissions and are relevant to Defendant's anticipated defense that he acquired citizenship at birth through his mother, a United States citizen.

Although born in another country, Defendant could acquire citizenship at birth if one of his parents was a U.S. citizen "who, prior to the birth of [Defendant], was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years. . . ." See Immigration and Nationality Act ("INA") of 1952 § 301, 66 Stat. 235 (then codified at 8 U.S.C. § 1401(a)(7), amended November 14, 1986, and now

codified at 8 U.S.C. § 1401(g)). This reflects the INA § 1401 in effect at the time of Defendant's birth in 1964, which is the applicable law in this case.[2] Therefore, if Defendant raises an acquired citizenship defense, he must prove that a parent was physically present in the United States for at least ten years before Defendant's birth, at least five of which were after the parent's fourteenth birthday.

Defendant counters that the Government has not specified the statements it intends to introduce; therefore, the motion in limine regarding party admissions is premature, as the admissibility of the unspecified statements cannot yet be determined. The Court agrees that a precise ruling on the admissibility of statements made by Defendant as party admissions would have proven difficult from the lack of specificity in the Government's opening brief for this motion.

In its reply brief, however, the Government attaches documents containing the statements it seeks to have admitted. These include:

(1) A sworn statement from Defendant's immigration file: "Q: Of what country are you a citizen? A: Hopefully United States through my mother. question: What country are you a citizen

[2] "The applicable law for transmitting citizenship to a child born abroad when one parent is a U.S. citizen is the statute that was in effect at the time of the child's birth." Solis-Espinoza v. Gonzales, 401 F.3d 1090, 1092 (9th Cir. 2005) (citation and internal quotations omitted). The Ninth Circuit has applied the ten-and-five requirement to persons born between 1952 and 1986. See, e.g., Solis-Espinoza, 401 F.3d at 1092; Scales v. INS, 232 F.3d 1159, 1162-63 (9th Cir. 2000).

of now? A: I guess *Mexico* until my mother files a petition." (emphasis added).[3]

(2) A plea colloquy where Defendant pleads guilty to section 1326 charges and states that he is not a U.S. citizen.

(3) A plea colloquy where Defendant pleads guilty to section 1326 charges and states that he is a Mexican citizen.

(4) Although not attached, the Government also seeks to introduce excerpts from recordings of Defendant's prior deportation hearings where he makes statements regarding his alienage.

(Declaration of Margaret Carter, ¶¶ 2-6, Ex. A-C.)

1. Statement (1): Sworn Statement in Immigration File

The Court holds that the statement (1) quoted above, the sworn statement from the immigration file, is admissible as a party admission.[4] A statement made during a deportation hearing, or to an immigration officer, may be offered against a party at a later criminal proceeding as a party admission. See United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997).[5] Although the Government seeks admission of only the

---

[3] The Court notes that the Government only seeks admission of the second half of this statement. The Court includes the entire statement as it is relevant to the discussion of admissibility below. The Court additionally notes that the word "Mexico" is unclear from the handwriting.

[4] Its admissibility remains subject to authentication that it is in fact Defendant's handwriting and part of his file.

[5] It does not appear that United States v. Ortega, 203 F.3d 675, 681 (9th Cir. 2000), a case cited by Defendant on this point, is applicable. The statement to an INS agent in Ortega was a violation of the Sixth Amendment, and was inadmissible as a party-admission because it was elicited without the consent and outside the presence of counsel. Id. At this time, there is no evidence (continued...)

second half of the question, which elicits a statement suggesting that Mexico is Defendant’s current country of citizenship, the Court finds that the Government must offer the sworn statement, as quoted at (1) above, in its entirety if at all.

The Rule of Completeness instructs that “[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.” Fed. R. Evid. 106. The Rule of Completeness aims to avoid misrepresentation of a statement by requiring presentation of those portions of the statement that are relevant to understanding its meaning. See Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 172 (1988) (“When one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is ipso facto relevant and therefore admissible under [Federal] Rules [of Evidence] 401 and 402.”)

Here, the Rule of Completeness warrants admission of statement (1) in its entirety or not at all. If the Court excluded the first portion of Defendant’s sworn written statement, where he asserts that the United States may be his country of citizenship through his mother, this would distort

[5](...continued) that Defendant’s statements were elicited in a manner that violates the Sixth Amendment.

the context of the latter portion of the statement. Defendant was asked essentially two similar questions regarding citizenship status in immediate succession. Defendant gave two answers: first, “Hopefully United States through my mother” and second, “I guess Mexico until my mother files a petition.”

By itself, the answer “I guess Mexico until my mother files a petition” suggests that Defendant believes he is currently a Mexican citizen. Read together, the answers are less conclusive. The two answers could alternatively mean that Defendant believes he has dual citizenship. On the other hand, the two answers could mean that Defendant was uncertain regarding his citizenship status. The point is that reading the statements in context results in one set of possible meanings, whereas reading the latter statement in isolation tends to create a different meaning. There is a serious risk that presentation of only the latter answer, separate and apart from the one before it, would distort, misrepresent, or confuse the meaning of the Defendant’s statement.

To illustrate this point by way of example, consider a police officer that comes upon a serious accident. A farmer and his horse lying in the roadway are severely injured. The officer first approaches the farmer and asks, “How do you feel?” The farmer responds, “I am hurt bad.” The officer then walks over to the horse, sees that the horse is suffering, takes out his firearm, and discharges the weapon, killing the horse in an act of mercy. The officer returns to

the farmer and asks, "So, how did you say you feel?" To which the farmer responds, "I feel fine."

The Court does not imply that Defendant was compelled to answer in a particular way when questioned. Rather, this example demonstrates that understanding a statement often requires an understanding of the context. The farmer does not feel fine, but gives a different answer upon a second ask out of fear that the officer might treat him like the horse. Viewing the latter question and answer from the example in isolation results in a different meaning than if the example is viewed as a whole. Meaning and context are inextricably intertwined.

The Rule of Completeness "does not compel admission of otherwise inadmissible hearsay evidence." See, e.g., United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996) (internal citations and quotations omitted). However, the Rule of Completeness was designed to prevent the Government from offering a "misleadingly-tailored snippet." See id. The Rule of Completeness warrants admission of statements in their entirety when the Government introduces only a portion of inextricably intertwined statements.

Statements are inextricably intertwined when the meaning of a statement, if divorced from the context provided by the other statement, is different than the meaning the statement has when read within the context provided by the other statement. Under those circumstances, a court must take care to avoid distortion or misrepresentation of the speaker's meaning, by requiring that the statements be admitted in their

entirety and allowing the jury to determine their meaning. Here, unless Defendant's statement is viewed in its entirety, there is a significant danger that its meaning will be taken out of context and misrepresent to the jury a meaning other than the one Defendant was communicating.[6]

To be clear, the Court does not dispute the general rule against using the Rule of Completeness to obtain admission of inadmissible hearsay. In essence, as a general rule, the Rule of Completeness cannot be used to trump the normal rules concerning the admissibility of evidence. A defendant may, during the course of an interrogation, make an inculpatory statement and later make an exculpatory statement. The general rule precluding the Rule of Completeness from being the basis for admitting the exculpatory statement would apply. A defendant would then need to base admission of the exculpatory statement on some other rule of evidence, if such rule were applicable to the particular situation at hand. In the situation just stated, the actual meaning of what was communicated in the inculpatory statement does not depend on the meaning of what was communicated in the exculpatory

---

[6] The Court further notes that the statement at issue here is distinguishable from those that were inadmissible in Ortega, 203 F.3d at 682 and Collicott, 92 F.3d at 983. First, the statement here was a written statement, whereas the statements in those cases were unrecorded oral confessions. See Ortega, 203 F.3d at 682; Collicott, 92 F.3d at 983. Second, the Rule of Completeness is applicable under the circumstances here, whereas there is not an indication in either Ortega or Collicott that the offered portions of statements created distortion or misrepresentation of the meaning of the statement. Although the Rule of Completeness cannot serve as an end run around the prohibition on inadmissible hearsay, this principle does not allow the Government to offer abridged portions of statements that distort the meaning of a statement.

statement. Thus, while the Rule of Completeness cannot be used in a general sense as an end run around the usual rules of admissibility, each analysis must be done on a case-by-case basis in order to avoid the injustice of having the meaning of a defendant's statement distorted by its lack of context.

In this case, the Rule of Completeness calls for admission of Defendant's statement in its entirety. Accordingly, the sworn statement is admissible, but only as quoted in (1) above.[7]

2. Other Party Admissions by Defendant

Statements (2) and (3) from the plea colloquies are admissible because Defendant pled guilty. Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(e)(6) provide in relevant part:

> [E]vidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
>
> (1) a plea of guilty which was later withdrawn;
>
> (2) a plea of nolo contendere;
>
> (3) any statement made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure or comparable state procedure <u>regarding either of the foregoing pleas</u>; or

---

[7] The Court additionally notes that other statements from deportation proceedings are likely admissible as party admissions, although it cannot rule definitively without having the precise statements before it.

> (4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

Fed. R. Evid. 410 (emphasis added). While a statement is inadmissible when made at a plea colloquy for a plea of guilty later withdrawn or a nolo contendere plea, a statement is admissible when made during a plea colloquy when a defendant pleads guilty. See id. Thus, Defendant's statements at the plea colloquies where he pled guilty are admissible.

The Government anticipates that Defendant may seek to offer statements where he has said he is a United States citizen. The Court notes that Defendant may not offer his own statements as party admissions, as only statements offered against a party-opponent are admissible under Federal Rule of Evidence 801(d)(2).

## III. MOTION IN LIMINE #2: CULTURAL ASSIMILATION

### A. Legal Standard

Rule 402 of the Federal Rules of Evidence declares that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority." Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the

evidence." To be "relevant," evidence need not provide conclusive proof of a fact sought to be proved. United States v. Curtin, 489 F.3d 935, 943 (9th Cir. 2007).

Rule 403 of the Federal Rules of Evidence provides that relevant evidence may be excluded when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." District courts have "wide latitude" in balancing the prejudicial effect of evidence against its probative value. United States v. Kinslow, 860 F.2d 963, 968 (9th Cir. 1988).

B. Analysis

The Government first seeks to exclude as irrelevant and prejudicial any evidence of Defendant's motives for returning to the United States after deportation. The Government argues that Defendant's motives do not tend to prove or disprove the elements of the illegal reentry charge, which is a general intent crime.

Although Defendant appears to have had a compelling reason for returning to the country, i.e. visiting his dying mother, the Court agrees. This motive is irrelevant to the elements of an illegal reentry charge, including the knowing and voluntary nature of reentry.

The Government next seeks to exclude as irrelevant and prejudicial any evidence relating to Defendant's "cultural assimilation," meaning the "length of time defendant has lived in the United States, his United States citizen children, or his lack of Spanish language skills." (Gov't.'s Mot. To Exclude Evidence Related to Jury Nullification 5.) Defendant

argues that such evidence is relevant to whether he is an alien.

The Court excludes this evidence because it is irrelevant to the elements of an illegal reentry charge. Still, evidence of the citizenship of Defendant's mother's citizenship is relevant and admissible to a possible defense of acquired citizenship.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motions: (1) The Court grants admission of the sworn statement from the immigration file, but requires admission of that statement in its entirety as explained above. The Court grants admission of the statements made during plea colloquies, and conditionally grants admission of statements from deportation proceedings.
(2) The Court excludes evidence of cultural assimilation.

IT IS SO ORDERED.

Dated: February 5, 2008

DEAN D. PREGERSON
United States District Judge